[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the plaintiff, pursuant to General Statutes § 47-258(j) seeks to foreclose on thirty campsites, the leaseholds of which are owned by the defendant Roaring Brook Associates for unpaid common assessments from September 1, 1992.
The plaintiff claims a six month priority lien pursuant to the Common Interest Ownership Act — General Statutes § 47-258 (b).
There are several issues of contention including whether to have strict foreclosure or foreclosure by sale, the fair market value of the property, the amount of the plaintiff's priority lien and whether it includes attorney's fees and interest on the late charges.
The parties presented testimony from three appraisers as to fair market value. They ranged from a low of $66,000 (or $60,000 in a liquidation sale) from Patrick Lemp, an appraiser retained by Advest Bank who holds a first mortgage of $105,000 on the property, to the plaintiff's appraiser, Robert Morra, with an appraisal of $101,000, to the named defendant's appraisal of $316,400 by Joanne Gober.
In weighing and analyzing the disparate testimony of these witnesses, the court has considered their backgrounds as it relates to their specialized knowledge, their training and experience, the reasonableness of the bases relied upon by them to support their opinions, the reasonableness and logic which form the bases of their opinions and their interest or biases for the testimony offered.
In addition to the foregoing, the Court also heard valuation testimony from an appraiser retained by Advest Bank who did an original appraisal of the property in 1991 and an updated appraisal CT Page 2640 in March 1993. That appraiser, Robert Pfeiffer, Jr., conceded that those appraisals were remote in time and should not be relied on for purposes of current valuation.
None of the appraisal testimony is accepted by the Court as totally accurate. Morra's appraisal was done in November 1994 and included adjustments for market decline, site improvements (including camp trailers). His conclusions, when compared to comparable sales, and the adjustments not credited by the Court, appear to the Court to be low.
Similarly, the Court does not accept the appraisal of Ms. Gober as totally accurate; for instance site improvements made to the comparable sales were inaccurately adjusted in the opinion of the Court.
The Court has carefully reviewed the reports of the appraisers, and their trial testimony. It finds the fair market value as follows:
A. 8 Water Front Lots:
 7 @ 9500 = 66,500 1 @ 6000 = 6,000
B. 3 Water View Lots:
3 @ 8500 = 22,500
C. 6 Wood Lots:
6 @ 5000 = 30,000
D. 13 View Lots:
 13 @ 7000 = 91,000 -------- Total F.M.V. $219,000
The debt to the plaintiff association as of January 30, 1995 is computed as follows:
 Unpaid Assessment and Accumulated interest (Exhibit D) $75,754.16 CT Page 2641
 Attorney's fees and costs (§ 47-258 (g). Atty. Laschever (Exhibit E) 4,625.00 Atty. Briggs (Exhibit F) 14,791.46 Appraisal fees 900.00
With respect to attorney's fees and costs or proper charges pursuant to § 47-258(g), our Supreme Court approved such awards as part of the priority lien in Hudson House Condominium Assoc., Inc.v. Brooks, 223 Conn. 610, 616-617 (1992). This case commenced in, April 1993. There were multiple court appearances. A judgment of strict foreclosure was previously entered and opened on motion by the defendant. A review of the bills and affidavit of attorney's fees by the Court does not lead the Court to conclude the bills are excessive.
As to interest, § 47-258 provides that the amount of the priority lien includes six months of common expense assessments made pursuant to General Statutes § 47-257. The plaintiff is, expressly authorized to charge interest by its declaration. On March 7, 1987, the Executive Board of the Association voted to charge 1 1/2% interest on late payments (Exhibit B). The defendant argues that the motion does not specify what period of time the 1 1/2% covers. Read in conjunction with the statute, the Court determines it to mean per month.
In addition to its debt to the plaintiff, there is a mortgage to Advest Bank which is in arrears, the balance being more than $137,000.
The plaintiff's lien has priority over that mortgage for six months of common expense assessments, plus attorney's fees, costs and interest (for six months).
From the foregoing, the Court concludes that a strict foreclosure should be ordered as there is insufficient equity to warrant a foreclosure by sale.
The clerk's office shall schedule this case for hearing on short calendar to finalize the debt as of the date of hearing and to establish law days.
Klaczak, J. CT Page 2642